1

2

3

4

5                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
6                                  AT SEATTLE

7    LINDA D. KAGER,                      )
                                          )
8                   Plaintiff,            )        CASE NO. C04-1858-RSL
                                          )
9           v.                            )        REPORT AND
                                          )        RECOMMENDATION
10   JO ANNE B. BARNHART,                  )
     Commissioner of Social Security,      )
11                                         )
                    Defendant.            )
12   _____)

13          Plaintiff Linda D. Kager appeals to the District Court from a final decision of the

14   Commissioner of the Social Security Administration (the "Commissioner") denying her

15   application for Disability Insurance Benefits under Title II of the Social Security Act.  For the

16   reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

17                              I.  PROCEDURAL HISTORY

18          On December 3, 1999, Plaintiff filed an application for Disability Insurance Benefits

19   ("DIB"), alleging disability since February 6, 1996, due to cervical and lumbar compressions with

20   positive MRI, thoracic outlet syndrome (bilateral), and post-concussive syndrome/reduced nerve

21   functioning to limbs.  Tr. 74-76, 141.  Her application was denied initially (Tr. 44, 46-49) and on

22   reconsideration (Tr. 45, 52-54).  On October 15, 2001, Plaintiff had a hearing before

23   Administrative Law Judge ("ALJ") Arthur Joyner.  Tr. 652.  Plaintiff, represented by a non-

24   attorney, testified at the hearing.  Tr.  665--687.  Medical expert Richard Knudsen and

25

26   REPORT AND RECOMMENDATION
     PAGE - 1

1  vocational expert Michael Swanson also testified.  Tr. 681-695.  On February 21, 2002, the ALJ

2  issued an unfavorable decision, finding Plaintiff not disabled because she could perform her past

3  relevant work.  Tr. 370-376.  Plaintiff, now represented by counsel, requested review by the

4  Appeals Council and submitted additional evidence which was dated prior to the hearing

5  decision.  Tr. 384, 388-399.  The request for review was granted by the Appeals Council, which

6  remanded the matter for further proceedings to fully evaluate the medical evidence, to obtain

7  additional medical evaluations, and for other evidence as necessary. Tr. 383-385.

8        A supplemental hearing was held before ALJ John F. Bauer on March 25, 2003.   Tr. 33.

9  Plaintiff testified at the hearing and she was represented by counsel.  Additionally, medical expert

10  Dr. Richard Knudsen, lay witness Jan Wesen, and vocational expert Leta Berkshire testified at

11  this hearing.  Tr. 699.  On June 18, 2003, the ALJ issued a decision finding the Plaintiff not

12  disabled because she could perform her past work.  Tr. 575-583.    Plaintiff's request for review

13  of that decision was granted by the Appeals Council and the matter was remanded for further

14  proceedings to include consideration of the lay witness testimony.  Tr. 585-586.

15        Another supplemental hearing was held before ALJ Bauer on January 5, 2004.  Tr. #.

16  Plaintiff,  represented by counsel, testified at the hearing.  Tr.  750.  The ALJ heard testimony

17  from Plaintiff.  Vocational expert Paul Tomita was also present at this hearing.  *Id.*  On March

18  29, 2004, the ALJ issued a decision finding Plaintiff not disabled because she could perform her

19  past relevant work.  Tr.  22-32.  On July 22, 2004, the Appeals Council denied Plaintiff's request

20  for review (Tr. 13-17), making the ALJ's decision the final decision of the Commissioner. *See*

21  20 C.F.R. § 404.981, 416.1481.   Plaintiff timely filed her appeal of this decision with this

22  Court.

23

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand for payment of benefits.  Plaintiff argues that the ALJ erred by: 1) improperly ignoring the findings and disability opinions of Plaintiff's treating and examining physicians; 2) failing to properly address Plaintiff's residual functional capacity pursuant to SSR 96-8P; 3) finding Plaintiff capable of performing her past work without following the mandatory provision of SSR 82-62 and SSR 96-8; 4) violating SSR 83-20 by failing to call a medical expert to assess the onset date of disability based on new medical reports and a 2001 physical capacities report that indicated disability; 5) improperly assessing Plaintiff's credibility; and 6) improperly rejecting most of the lay witness testimony and written statements.  Defendant responds that the Commissioner's decision should be affirmed because it is supported by substantial evidence and is free of legal error.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

REPORT AND RECOMMENDATION
PAGE - 3

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

REPORT AND RECOMMENDATION
PAGE - 4

1    Plaintiff, who was born in April, 1947, was 56 years old at the time of the second

2    supplemental hearing before the ALJ.  Tr. 74.  She has a high school education and she

3    completed several years of college.  Plaintiff also completed 600 hours of training in electrolysis

4    in 1989.  Tr. 147.  She previously worked as a word processor and electrologist.  Tr. 141.

5    Plaintiff's medical problems began after she was rear-ended in a car accident in February, 1995.

6    Tr. 158, 437, 718.  She was involved in similar rear-end accidents in May, 1997, and again in

7    1999.  Tr. 437, 679, 718.  Plaintiff was the driver in the first accident, and the passenger in the

8    other two accidents.  Tr. 518.  Plaintiff identifies the following problems that make her feel

9    disabled and unable to work: atrophy of left leg, problems walking, does not have functional use

10   of her arms, cannot bend her head, unable to sit and sustain a position.  Tr. 141, 670-71.

11   Plaintiff's last date insured was June 30, 1999; therefore she has the burden of showing

12   that she was disabled on or before that date.  Tr. 136.  Other evidence relevant to Plaintiff's

13   allegations is incorporated into the discussion below.

14                                  VI.  THE ALJ'S DECISION

15   The ALJ found that Plaintiff had not engaged in substantial gainful activity since her

16   alleged disability onset date.  Tr. 23, 31.  He determined that at the time she was last insured,

17   Plaintiff's severe impairments were degenerative joint disease of the neck and back.  *Id.*  He

18   found that these impairments do not meet or equal the criteria of any listing.  Tr. 24, 31.  The

19   ALJ determined that at the time Plaintiff's insured status expired, she retained the residual

20   functional capacity to perform sedentary to light work; she also needed a sit/stand option.  Tr.

21   30, 32.   In reaching this conclusion, the ALJ found that Plaintiff's statements concerning her

22   impairments and their impact on her ability to work are not entirely credible in light of the

23   medical reports and evidence of record.  Tr. 24, 31. At step 4, the ALJ found that Plaintiff

24   retained the residual functional capacity to perform her past relevant work.  Tr. 31, 32.

25

26   REPORT AND RECOMMENDATION
     PAGE - 5

1   Accordingly, the ALJ concluded that Plaintiff was not disabled at any time through the date her

2   insured status expired and she is not entitled to a period of disability or to DIB benefits.  Tr. 32.

3                                       VII.  DISCUSSION

4           In the decision at issue in this case, the ALJ states the following at the beginning of his

5   evaluation of the evidence of record:

6           The discussion of the exhibits and other evidence contained in the prior decisions
            is incorporated herein by reference.  The analysis of those exhibits, as well as the
7           conclusions reached, are also incorporated herein, except as modified below.

8   Tr. 23.   Thus, all three of the ALJ's decisions are considered in addressing the issues raised by

9   Plaintiff.

10  A.      Opinions of Treating and Examining Physicians

11          Plaintiff argues that the ALJ erred by failing to properly evaluate the disability opinions

12  and findings from her treating and examining physicians concerning her mental and physical

13  impairments.  She claims that the ALJ disregarded the opinions of her treating and examining

14  physicians in favor of the opinions from a nonexamining medical expert.

15          More weight is given to a treating physician's opinion than to the opinion of a

16  nontreating physician because a treating physician "is employed to cure and has a greater

17  opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*. 881 F.2d

18  747, 751 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

19  However, the treating physician's opinion is not necessarily conclusive as to either a physical

20  condition or the ultimate issue of disability.  *Rodriguez v. Bowen,* 876 F.2d 759, 761-62 n. 7 (9th

21  Cir. 1989).  Likewise, greater weight is accorded to the opinion of an examining physician than a

22  non-examining physician.  20 C.F.R. § 416.917(d)(1); *see Pitzer v. Sullivan*, 908 F.2d 502, 506

23  n. 4 (9th Cir. 1990).

24

25
    REPORT AND RECOMMENDATION
26  PAGE - 6

1    While the ALJ may disregard the opinion of a treating physician, whether or not

2    controverted, the ALJ may reject an uncontroverted opinion of a treating physician only for clear

3    and convincing reasons. *Magallanes*, 881 F.2d at 751.  The same rules applies to the opinions of

4    an examining physician in the absence of legitimate conflicting testimony and any reason for the

5    ALJ's rejection of the examining physician's opinion.  *See Pitzer*, 908 F.2d at 506.

6    Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

7    nontreating source is based on independent clinical findings that differ from those of the treating

8    physician, the opinion of the nontreating source may itself be substantial evidence; it is then

9    solely the province of the ALJ to resolve the conflict.  *Magallanes*, 881 F.2d at 751.  Where, on

10   the other hand, a nontreating source's opinion contradicts that of the treating physician but is not

11   based on independent clinical findings, or rests on clinical findings also considered by the treating

12   physician, the opinion of the treating physician may be rejected only if the ALJ gives specific,

13   legitimate reasons for doing so that are based on substantial evidence in the record.  *Id.* at 751,

14   755.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (applying test where ALJ relied

15   on contradictory opinion of nonexamining medical advisor).

16   In the present case, Plaintiff argues that the ALJ rejected the diagnoses of her treating

17   and examining physicians that she has adjustment disorder, thoracic outlet syndrome, carpal

18   tunnel syndrome, post-concussive syndrome, cervical myelopathy, peripheral nerve entrapment,

19   and a "complex pain management problem" in favor of the opinions of the nonexamining medical

20   expert, Dr. Knudsen, who testified at two of the hearings and disagreed with all of Plaintiff's

21   treating and examining physicians.  She argues that the ALJ accepted Dr. Knudsen's opinions

22   without following the regulations for assessing the weight of a physician's opinions and without

23   reviewing evidence that contradicted his testimony.  She further argues that the ALJ ignored all

24   the evidence of her mental impairments.

25

26   REPORT AND RECOMMENDATION
     PAGE - 7

A review of the record reveals that in his second decision issued on June 18, 2003, the ALJ discussed the conditions listed above and gave his reasons for concluding that they were not severe impairments for Plaintiff.  *See* Tr. 578-79.  The ALJ acknowledged that he based this conclusion on "the compelling testimony from the medical expert," Dr. Knudsen, who "testified that the medical evidence did not support the existence of other diagnoses, despite their mention in the documentary medical record."  Tr.  578.

First, in regards to the opinion concerning the existence of myelopathy, the ALJ indicated that Dr. Knudsen challenged this conclusion on the basis that the evidence only indicated the presence of degenerative disc disease in the neck and in the lumbar region.  *Id.*  Second, regarding the alleged existence of a depressive syndrome, the ALJ stated that Dr. Knudsen noted that Sang Suh, M.D., who described Plaintiff as having "demonstrated significant depressive symptomologies," did not list findings that showed Plaintiff to be "markedly, clinically depressed" and did not find that her "moderate limitations" prevented all work activity.  Tr. 520, 578.  Third, regarding the diagnosis of thoracic outlet syndrome, the ALJ indicated that Dr. Knudsen stated that this "diagnosis" lacked any clinical evidence and no action was taken on this diagnosis, such as an offer of any surgery to alleviate the supposed symptoms.  Tr. 579.  Fourth, in regards to carpal tunnel syndrome, the ALJ noted Dr. Knudsen's explanation that this diagnosis was unaccompanied by electrodiagnostic criteria that would support a finding that the necessary medical criteria had been met.  Fifth, in regards to post-concussive syndrome, Dr. Knudsen indicated that the medical record did not show the existence of any significant post concussive head injury.

The ALJ indicated that he gave greater weight to Dr. Knudsen's opinions than to the opinions indicating the presence of these conditions because "Dr. Knudsen has had the advantage of seeing all of the medical evidence: something that has not been possible for the treating

REPORT AND RECOMMENDATION
PAGE - 8

1   sources. Thus, Dr. Knudsen has had the additional advantage of seeing the inconsistencies in the

2   medical opinions as well as all of the diagnostic studies." Tr. 579.  While the ALJ's opinion only

3   briefly summarizes Dr. Knudsen's reasons for rejecting these conditions as severe impairments, a

4   review of the transcripts of Dr. Knudsen's testimony at the first supplemental hearing on March

5   25, 2003, shows that Dr. Knudsen expressly pointed to specific evidence in the record that

6   conflicted with a particular diagnosis and he highlighted the absence in the medical records of

7   certain types of diagnostic criteria or testing that would support a particular condition.  *See e.g.*

8   Tr. 707-712.

9           In light of these facts, I conclude that the ALJ, relying on Dr. Knudsen's opinion as a

10  medical expert, has provided specific and legitimate reasons that are supported by substantial

11  evidence in the record for rejecting certain findings and disability opinions of Plaintiff's treating

12  and examining physicians.  Accordingly, the ALJ did not err in evaluating the opinions of

13  Plaintiff's treating and examining physicians regarding her physical and mental impairments.

14  B.      Plaintiff's Credibility

15          Plaintiff argues that the ALJ's assessment of her credibility is contrary to SSR 96-7.  She

16  contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.

17          If a claimant has established an underlying impairment which reasonably could be

18  expected to produce the alleged subjective complaints and there is no evidence of malingering,

19  the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony.  *See*

20  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  General findings are insufficient; rather,

21  the ALJ must identify what testimony is not credible and what evidence undermines the

22  claimant's complaints.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of*

23  *Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (Varney I).

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 9

1    The ALJ must identify what testimony he finds not credible and what evidence

2    undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (1993). In assessing

3    credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility evaluations,

4    such as the claimant's reputation for lying and prior inconsistent statements concerning the

5    symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a

6    prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending

7    to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th

8    Cir. 2001).

9    In the present case, Plaintiff testified that she has atrophy of her left leg and she does not

10   have full function use of her arms. Tr. 670. Plaintiff described her limitations as follows: she can

11   only pick up a few pounds without having a problem and she cannot walk a block (Tr. 659); she

12   can only sit up to half an hour without having to wiggle around (Tr. 660); she has problems with

13   bathing and dressing because of hardship to her neck and arms (Tr. 666); and she has lost the

14   muscle in her hands, she has pain in both hands and arms, she gets cramping in her hands and her

15   hands also shake if she uses them for fine motor things (Tr. 674). Plaintiff further testified that

16   she can lift less than ten pounds and that lifting hurts her neck. Tr. 719. She stated that she can

17   reach forward, but cannot stay forward (Tr. 719) and she has problems reaching above her head

18   (Tr. 720). She indicated that when she uses her arms, it hurts her neck, and when her neck hurts

19   it affects her vision.   If she continues to use her arms, she becomes nauseous to the point of

20   throwing up. Tr. 719. Plaintiff testified that between 1996 and 1999, her average pain level on a

21   daily basis was 5-7 on a scale of 1-10. Tr. 723.   Plaintiff also testified that her physical

22   impairments have caused her to have depression and she has a problem with short-term memory.

23   Tr. 724.

24   The ALJ determined that Plaintiff was only partially credible, in light of information

25

26   REPORT AND RECOMMENDATION
     PAGE - 10

1   contained in the medical reports and elsewhere in the record.  Tr. 24, 374, 581.  In the first

2   decision, the ALJ noted Plaintiff's testimony that she used an electric scooter, that she sometimes

3   sleeps in her clothes due to difficulty dressing, and she has difficulty taking a bath or shower.

4   He rejected this testimony on the basis that Plaintiff does not have prescribed pain medication,

5   rather she lies down due to pain.  Tr. 374.  The ALJ also noted Plaintiff's specific complaints

6   regarding the use of her hands and arms, as described above, and he rejected these claims on the

7   basis that there is no objective evidence in the record that supports such symptoms.   The ALJ

8   further noted that Plaintiff's complaints are grossly disproportionate to the clinical findings as

9   well as the opinions of her attending physicians, the state agency review physicians, and Dr.

10   Knudsen's testimony. *Id.*

11       In assessing Plaintiff's credibility in his March, 2004 decision, the ALJ found that she

12   has some limitations in functioning but not to the point of disability.  Tr. 28.  He noted that she

13   attends swimming exercises and plays outside with her dogs, and she has not had any invasive

14   treatment or significant pain therapy consistent with her alleged limitations.  *Id.*  He further noted

15   that at one time Plaintiff reported that she fell and injured herself because she was "too frisky"

16   while on the side of a mountain.  Tr.  29.   The ALJ concluded that this factor indicated that

17   Plaintiff was more agile and physically capable than alleged.  *Id.*   Although he acknowledged

18   Plaintiff's explanation in the most recent hearing that she was house-sitting at the time and not

19   clambering on a mountainside, the ALJ concluded that she was "nevertheless engaging in a range

20   of daily activities that exceeded her professed limitations." *Id.*

21       These are all clear and convincing reasons based on Plaintiff's daily activities and medical

22   evidence tending to discount the severity of her symptoms.  Accordingly, I conclude that the ALJ

23   did not err in finding Plaintiff's testimony not entirely credible.

24

25
    REPORT AND RECOMMENDATION
26  PAGE - 11

1    C.     <u>Lay Witness Statements and Testimony</u>

2       Plaintiff argues that the ALJ improperly rejected lay witness testimony and written

3 statements to the extent it was unsupported by the medical evidence. An ALJ must consider a

4 lay witness' observations of how the claimant's impairment affects his ability to work. 20 C.F.R.

5 § 404.1513(e)(2); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). An ALJ may reject

6 such testimony only if "reasons germane to each witness" are given. *Dodrill v. Shalala*, 12 F.3d

7 915, 919 (9th Cir. 1993).

8       Here, the ALJ evaluated written statements from three lay witnesses, Terry Healy, Sherri

9 Douglas, and Jan Wesen (Tr. 428, 431-32, 433-34), as well as testimony from Jan Wesen at the

10 first supplemental hearing in March, 2003 (Tr. 737-43). A review of the ALJ's decision reveals

11 that he both adequately summarized the content of each witness' written statement/testimony and

12 articulated reasons specific to each statement in assessing the weight to be given to it. Tr. 29.

13 Although for each statement, the ALJ noted that it was not consistent with the medical reports,

14 the ALJ also specifically expressed other reasons for the weight given to each statement.

15 Therefore, I conclude that the ALJ did not err in evaluating the lay witness statements and

16 testimony.

17    D.     <u>RFC Assessment</u>

18       Plaintiff argues that the ALJ failed to properly evaluate her residual functional capacity

19 pursuant to SSR 96-8p. She claims that the ALJ ignored the requirements of SSR 96-8p and

20 relied exclusively on Dr. Knudsen's testimony that Plaintiff was able to perform work activity at

21 the sedentary to light levels of physical exertion with a sit/stand option, and he erred in making

22 this RFC finding without conducting a function-by-function analysis with a "narrative discussion

23 describing how the evidence supports each conclusion." Plaintiff also argues that the ALJ failed

24 to assess whether she is capable of working on a "regular and continuing basis."

25

26 REPORT AND RECOMMENDATION
PAGE - 12

1    A claimant's RFC is based on what she can still do despite her limitations.  *See* 20 C.F.R.

2  § 416.945(a) (2001).  At the hearing level, the ALJ evaluates a claimant's RFC at step four of

3  the sequential evaluation process by considering all of the evidence, including any physical and

4  mental limitations.  *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p.  SSR 96-8p

5  provides that "[t]he RFC assessment considers only functional limitations and restrictions that

6  result from an individual's medically determinable impairment or combination of impairments,

7  including the impact of any related symptoms."  The ALJ is free to accept or reject restrictions

8  that the claimant alleges provided his findings are supported by substantial evidence.

9  *Magallanes*, 881 F.2d at 756-57.

10   The Social Security Regulations require that the ALJ undertake a "function-by-function"

11  analysis of the claimant's capacity to work according to exertional categories.

12    The RFC assessment must first identify the individual's functional limitations or
    restrictions and assess his or her work-related abilities on a function-by-function
13    basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R. 404.1545
    and 416.945.  Only after that may RFC be expressed in terms of the exertional
14    levels of work, sedentary, light, medium, heavy, and very heavy.

15  SSR 96-8p.

16   In the present case, in its review and remand of the ALJ's February, 2002, decision for

17  further proceedings, the Appeals Council indicated that the ALJ had failed to provide sufficient

18  rationale with specific references to evidence in the record in support of the residual functional

19  capacity assessed by the ALJ in that decision.  Tr. 383.  Accordingly, in his March, 2003,

20  decision, the ALJ assessed Plaintiff's RFC as limited to a light level of physical exertion with

21  additional restrictions.  Tr. 580.  In support of this conclusion, the ALJ relied on the testimony of

22  medical expert, Dr. Knudsen, and on the findings of a medical consultant for the Disability

23  Determination Service (DDS), Alnoor Virji, M.D.

24   The ALJ noted that Dr.Knudsen, after reviewing the medical record, testified that

25
REPORT AND RECOMMENDATION
26  PAGE - 13

1    Plaintiff was able to perform work at the sedentary to light levels of physical exertion, and that

2    she might need a sit/stand option.  Tr. 580, 713.  The ALJ indicated that further support for his

3    conclusion was found in the Dr. Virji's March 1, 2001, RFC assessment for Plaintiff, wherein he

4    found an even less physically restrictive residual functional capacity.  Tr. 340-47, 580.  The ALJ

5    notes, "Dr. Virji found that claimant was able to lift and carry 20 pounds occasionally and 10

6    pounds frequently.  Additionally, the claimant was capable of sitting and standing/walking for 6

7    hours each during and 8-hour workday."  Tr. 580; *see also* Tr. 341.  Further, the ALJ indicated

8    that he also considered the entire medical record, including opinions that described Plaintiff as

9    "disabled" or as more restricted in her activities than described in the RFC (Tr. 580), and he

10   considered Plaintiff's testimony concerning her subjective complaints and limitations.  Tr. 581.

11          Additionally, in his more recent March, 2004, decision, which incorporates by reference

12   analysis of evidence from the prior decision, the ALJ restates his finding regarding Plaintiff's

13   RFC as follows:

14          Based on an evaluation of the credible evidence in the light of the record as a
            whole, the undersigned finds that on and before the date she was last insured, the
15          claimant retained the residual functional capacity to perform sedentary to light
            work.  Light work involves lifting no more than 20 pounds at a time, with
16          frequent lifting or carrying of objects weighing up to 10 pounds.  A job is also in
            this category if it requires a good deal of walking or standing, or sitting most of
17          the time with some operation of hand or foot controls.  The ability to perform
            light work usually permits a person to also perform sedentary work.  Sedentary
18          work involves lifting no more than 10 pounds at a time, and occasionally lifting
            articles like files, ledgers and small tools; it is usually performed while sitting, but
19          some standing and walking is often necessary (20 C.F.R. 404.1567).  The
            claimant also needed a sit/stand option.
20
     Tr. 30.
21
            Because these facts demonstrate that the ALJ utilized the benefit of the state examiner's
22
     function-by-function assessment, Dr. Knudsen's evaluation of the medical evidence, as well as
23

24

25   REPORT AND RECOMMENDATION
26   PAGE - 14

1  his own assessments of the medical records and Plaintiff's credibility,  I conclude that he did not

2  err in assessing Plaintiff's RFC.

3  E.      ALJ's Past Relevant Work Finding

4          Plaintiff argues that the ALJ's finding that she could perform her past relevant work

5  ("PRW") is not supported by substantial evidence and constitutes an error of law because the

6  ALJ concluded that she could perform her past work without doing a functional analysis of her

7  capabilities and comparing them with those required for her prior work as required under SSR

8  96-8p and SSR 82-62.

9          As noted above in subsection "D", the ALJ properly evaluated Plaintiff's residual

10  functional capacity.  Additionally, the record shows that when the ALJ presented a hypothetical

11  to the vocational expert on whether Plaintiff, with this RFC, would be able to do her past work,

12  the VE responded that she would be able to do her past relevant work because the electrologist

13  position has an exertional rate of light, and the word processing machine operator position has an

14  exertional level of sedentary.  Tr. 743.   Therefore, I conclude that the ALJ did not err in relying

15  on the VE's testimony that Plaintiff could perform her past relevant work.

16  F.      Alleged Violation of SSR 83-20

17          Plaintiff argues that the ALJ violated SSR 83-20 by "failing to summon a medical expert

18  to assess the onset date of disability once new medical reports established that Plaintiff meets or

19  equals listing section 4.12, "Peripheral Arterial Disease" and the ALJ determined that a 2001

20  PCE [physical capacities evaluation] indicated disability at the time."  Dkt. 14, Plaintiff's

21  Opening Brief, p. 15.  She contends that since the ALJ indicates the evidence showed disability in

22  2001 and subsequent reports document possible causes, the ALJ clearly erred by failing to

23  summon a medical expert to determine the disability onset date.

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 15

1    However, Plaintiff's argument here is misleading in that she fails to acknowledge that the

2   ALJ expressly rejected the August, 2001 PCE assessment,  finding that the "test was performed

3   over two years after the date the claimant was last insured and is of questionable relevance to the

4   issue at hand."  Tr. 27.  Additionally, the ALJ noted that earlier testing during the relevant time

5   period did not support this assessment.  *Id.*  Thus, the ALJ concluded that the August, 2001

6   report was not an adequate assessment of the claimant's condition when she was insured.  *Id.*

7   Given these facts, I find Plaintiff's argument here to be without merit.

8                                    VIII.  CONCLUSION

9    The Commissioner's determination to deny Plaintiff DIB benefits is supported by

10  substantial evidence and is free of legal error.  Based on the record evidence, the undersigned

11  recommends that the Commissioner's decision be AFFIRMED.  A proposed Order accompanies

12  this Report and Recommendation.

13    DATED this 8th day of September, 2005.

14

15

16

17                                    Monica J. Benton
                                     United States Magistrate Judge

18

19

20

21

22

23

24

25
    REPORT AND RECOMMENDATION
26  PAGE - 16